73 S.E.2d 825 (1952)
BURROWS
v.
BOWER et al.
No. 10507.
Supreme Court of Appeals of West Virginia.
Submitted September 17, 1952.
Decided October 14, 1952.
Dissenting Opinion January 13, 1953.
Wm. Bruce Hoff, Parkersburg, Lorentz C. Hamilton, Grantsville, for plaintiffs in error.
Oliver D. Kessel, Ripley, Stanley D'Orazio, Grantsville, for defendant in error.
LOVINS, Judge.
By this proceeding instituted in the Circuit Court of Calhoun County, Martin Burrows, petitioner, a candidate for member of the Democratic County Executive Committee from Center District, at the primary election held on May 13, 1952, sought a writ of mandamus directing Clarence O. Bower, Foster Poling and Kenneth Hall, Commissioners of the County Court of that county, and as such, ex officio, the board of canvassers, defendants, hereinafter referred to as "board", to reconvene and to reject 10 abstentee voters' ballots, voted and counted in Precinct 6, for the reason that the applications for such ballots had not been made within the period prescribed by Code, 3-6-2; to reject 31 ballots cast by absentee voters in Precinct 6, and counted, on the ground that none of those ballots had been impressed with the official seal of the Clerk of the Circuit Court of Calhoun County, as required by Code, 3-6-5; to reject 23 absentee voters' ballots because they had not been signed by such clerk personally as required by Code, 3-6-5; to reject one allegedly challenged ballot; to reject 32 ballots cast and counted at Precinct 6, for the reason that such ballots were sample ballots purportedly used as official ballots, contrary *826 to the provisions of Code, 3-4-11; and to make a proper certificate showing the correct result of the election.
A writ of mandamus was granted by the Circuit Court of Calhoun County on July 7, 1952, directing the board to reconvene and to reject the 31 absentee voters' ballots upon which the official seal of the clerk of the circuit court had not been affixed, and to reject 29 sample ballots, which had been voted as official ballots. The writ did not issue with specific reference to the 23 absentee voters' ballots which had not been signed personally by the circuit clerk for the reason that such ballots were a portion of the 31 ballots which the writ directed to be rejected; nor was there any adjudication with reference to the 10 absentee voters' ballots for which it was contended that there were untimely applications; nor did the court consider the allegedly challenged ballot. The final result of the primary election had theretofore been declared by the board to be 398 votes for J. Lawrence Jarvis, the only other candidate for the office of committeeman, and 394 votes for Burrows. The final order of the lower court would change that result by giving 376 votes to Burrows and 356 votes to Jarvis. From that order, the defendants bring this writ of error and supersedeas.
We do not state this case in detail in this opinion, for the reason that the instant case was considered and decided by this court simultaneously with the case of Gibson v. Bower. In that case, the opinion, filed simultaneously herewith, contains a full statement of the pleadings and the proceedings had therein. In that respect, the Gibson case is identical with the instant case, and in both cases, substantially the same questions were presented. The 31 absentee voters' ballots here involved are a portion of the 117 absentee ballots considered in the Gibson case, and the sample ballots involved in both cases are the same. The adjudication with reference to those ballots, as set forth in the opinion in the Gibson case, obtains here and is not repeated.
Consideration must be given here to the allegations of the petition concerning the improper counting of the 10 absentee ballots for which applications were not made within the statutory period, i. e. not sooner than 30 days or later than 10 days prior to the election. The exhibits filed at the hearing substantiate those allegations. A rejection of those ballots would change the result of the election from that finally certified by the board and would justify the issuance of the writ. But those ballots were not isolated in any manner, and it is not known, or ascertainable with mathematical certainty, for whom they were cast. It is urged in the petition that there be a reduction of the votes cast for each candidate by apportioning the loss to each candidate according to the whole number of votes received by him reduced by the ratio the number of rejected ballots bears to the total number of votes cast for both candidates. For a discussion of the theory of proportional reduction, see McCrary on Elections, Fourth Edition, Section 495. That principle has never been given judicial sanction in this jurisdiction. It is not necessary to a decision of this case that the principle be approved or disapproved, and, accordingly, we do neither. We observe, however, that even if the principle be applied to this case, the result would not give petitioner the nomination. We conclude that the 10 absentee ballots cannot be rejected, and that those ballots were properly counted.
We have been cited to the case of Park v. Landfried, W.Va., 63 S.E.2d 586, but that case is inapplicable here for the reason that in that case it was determinable with mathematical certainty how the ballots in dispute were cast.
For the reasons stated here and in the opinion in the case of Gibson v. Bower, the judgment of the circuit court is reversed.
Reversed.
HAYMOND, Judge (dissenting).
I dissent from the holding of the majority insofar as it approves and applies point 1 of the syllabus in Gibson v. Bower, W. Va., 73 S.E.2d 817, for the reasons set forth in the dissenting opinion filed by me in that case relating to the use of sample ballots approved as official ballots by the *827 deputy of the circuit clerk. My reasons for dissenting on that point are fully stated in my dissenting opinion in that case and it is unnecessary to repeat them in this dissent.